IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RALPHIETTE TARPEH,** | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | CIVIL NO. 24-0803 |
| | : | |
| **FREERATEUPDATE.COM, LLC,** | : | |
| *Defendant.* | : | |
| | : | |

Scott, J.                                                                                                     September 4, 2025

## MEMORANDUM

Plaintiff Ralphiette Tarpeh alleges that Defendant Freerateupdate.com, LLC ("FRU") racially discriminated against her when FRU fired her from her job as a Customer Service Representative. FRU has moved for summary judgment, arguing that, based on the evidence gathered during discovery, Tarpeh cannot establish that her firing occurred under circumstances that could give rise to an inference of intentional discrimination. For the reasons that follow, the Court denies Defendant's motion for summary judgment and allows this case to proceed to trial.

1

## I.   Factual Background[1]

Plaintiff Ralphiette Tarpeh, a Black woman, worked as a Customer Service Representative ("CSR") at FRU from October 2015 to January 31, 2023. ECF No. 14-1, ¶ 1. In 2019, Tarpeh was promoted to a team leader position but voluntarily stepped down from that position and returned to the CSR position in 2021. *Id.* ¶ 3; *see also* ECF No. 13-5, ¶ 5. In March 2022, Tarpeh received permission from FRU to work full-time in a remote position, as Tarpeh moved to Georgia to, *inter alia*, take care of a sick relative. ECF No. ¶¶ 4–5.

After Tarpeh had moved to Georgia and began working remotely, her performance suffered. From July 2022 to December 2022, Tarpeh finished among the bottom ten CSR performers at FRU. *Id.* ¶ 7. In January 2023, Tarpeh was among the bottom five CSR performers at FRU. *Id.* ¶ 11. During her deposition, Tarpeh acknowledged the declining performance, explaining it was due to "getting adjusted to a new environment," to the time demands of caring for a sick relative, and to having lost "the zeal in [her] to do [the work]." ECF No. 13-6 at 189:11–12; ECF No. 14-1, ¶ 8.

On January 6, 2023, Tarpeh had a meeting with Timothy Dosunmu, her supervisor and "Team Lead;" Anthony Argiroudis, FRU's Chief Operating Officer and Dosunmu's manager; and "two other underperforming employees," both of whom are white. *Id.* ¶¶ 2, 4, 10. Dosunmu and Argiroudis informed Tarpeh and the two other employees that "they needed to improve their performance." *Id.* ¶ 11. On January 25, 2023, Tarpeh went offline for three hours without clocking out, about which Argiroudis texted Tarpeh to ask her to explain the absence; Tarpeh stated that she had "wi-fi issues." *Id.* ¶¶ 12–13. Then, on January 26, 2023, Dosunmu sent Tarpeh an email,

---

[1] The Court's recitation of the facts is based primarily on Defendants' Statement of Undisputed Material Facts (ECF No. 13-2) and Plaintiff's Opposition to Defendant's Statement of Undisputed Material Facts (ECF No. 14-2).

with the subject line "Important, please read (warning)," reprimanding Tarpeh for appearing distracted on calls and attaching recordings of certain calls as examples. *Id.* ¶ 14. On January 31, 2023, FRU terminated its employment of Tarpeh. *Id.* ¶ 16. On December 27, 2023, FRU terminated for performance reasons one of the two white employees whom FRU had also instructed to improve their performance during the January 6, 2023 meeting that Tarpeh attended. *Id.* ¶ 17.

## II.     Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law." *Physicians Healthsource, Inc. v. Cephalon, Inc. et al.*, 954 F.3d 615, 618 (3d Cir. 2020) (citation omitted). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation modified). "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 151 (3d Cir. 2017) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which she bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "'[O]nly evidence sufficient to convince a

reasonable factfinder' merits consideration at this stage." *Fowler v. AT & T, Inc.*, 19 F.4th 292, 299 (3d Cir. 2021) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)). Bare assertions, conclusory allegations, or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

In deciding a summary judgment motion, the Court draws all reasonable inferences in the nonmovant's favor. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022). Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted). Credibility determinations, the drawing of legitimate inferences from facts, and the weighing of evidence are matters left to the jury. *Anderson*, 477 U.S. at 255.

### III.    Discussion

Plaintiff brings two racial discrimination claims against FRU, one under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the other under the Pennsylvania Human Rights Act, 43 Pa.C.S.A. § 951. The *McDonnell Douglas* burden-shifting framework governs analysis of both claims, so the Court treats them in tandem. *See, e.g.*, *Onely v. Rdner's Markets, Inc.*, 697 F.Supp.3d 410, 420 n.4 (E.D. Pa. 2023) ("Courts evaluate [employment discrimination] claims under the PHRA using the same standard as Title VII claims") (citation omitted).

To prove her case, Tarpeh must first establish a *prima facie* case of employment discrimination by showing that (i) she is a member of a protected class; (ii) she was qualified for the position she sought to retain; (iii) she suffered an adverse employment action; and (iv) the action occurred under circumstances that could give rise to an inference of intentional

discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "This test is 'not onerous and poses 'a burden easily met.'" *Onely*, 697 F.Supp.3d at 420 (quoting *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008)) (other citation omitted).

Once Tarpeh establishes her *prima facie* case, then "an inference of discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Makky*, 541 F.3d at 214 (citation omitted). Once FRU provides such a reason, the "inference of discrimination drops, and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for discrimination." *Id.* (citation modified).

FRU marshals two main arguments in support of its motion for summary judgment. First, FRU argues that Tarpeh fails to establish the *prima facie* case because she cannot establish that her termination occurred under circumstances that could give rise to an inference of intentional discrimination. ECF No. 13-1 at 9–10. Second, FRU argues that Tarpeh cannot establish that FRU's reason for terminating her was merely pretext for unlawful discrimination. *Id.* at 10–13. The Court addresses each argument in turn.

A. Tarpeh Has Established a *Prima Facie* Case of Discrimination.

There is no genuine dispute that Tarpeh is Black, was qualified for the Customer Service Representative position, and was terminated from that job. FRU argues, however, that Tarpeh cannot establish a *prima facie* case of discrimination because nothing in the record could give rise to an inference of intentional discrimination. Tarpeh counters by pointing out that she was the only person quickly fired among three employees, even though she had marginally outperformed

the two other employees—both of whom were white—for six of the seven months prior to her termination. *See* ECF No. 14-2 at 5–6; ECF No. 14-4 at 192:4–193:20.[2]

The question before the Court is thus whether Tarpeh's testimony and the related evidence could permit a reasonable factfinder to draw an inference in Tarpeh's favor. The Court answers this question affirmatively. Much hinges on Tarpeh's credibility, and it is proper for such credibility determinations to be left to the jury. *Anderson*, 477 U.S. at 255; *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (explaining that, on summary judgment, courts "will not weigh the evidence or make credibility determinations"). Supposing in the non-movant's favor, as we must at this stage, that a jury finds Tarpeh's testimony credible, that jury could view the record as sufficient to give rise to an inference of intentional discrimination.

B. Can Plaintiff Demonstrate through Record Evidence that Her Termination was a Pretext for Unlawful Discrimination?

To counter Tarpeh's *prima facie* showing, FRU articulates a legitimate, non-discriminatory reason for terminating Tarpeh's employment: after transitioning to full-time remote work, Tarpeh's performance declined and, as Tarpeh herself testified, she lost the "zeal" for the job. ECF No. 13-2 ¶ 8; *see also Carter v. Mid-Atlantic Healthcare, LLC*, 228 F.Supp.3d 495, 505 (E.D. Pa. 2017) (collecting cases and observing that "[c]ourts within this district have routinely accepted evidence of a plaintiff's failure to meet expected performance goals, in addition to poor work performance, as facially legitimate, non-discriminatory reasons for adverse employment decisions.").

Because FRU has carried its burden, the burden now returns to Tarpeh "to point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve

---

[2] One of those two white employees, was, however, terminated approximately eleven months after Tarpeh.

the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). To do so, Tarpeh "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [FRU's] proffered legitimate reason[] for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer that the employer did not act for the asserted non-discriminatory reason." *Id.* at 764–65.

FRU claims that Tarpeh's "own unsupported deposition testimony that she believed her termination was discriminatory is not enough to defeat summary judgment." ECF No. 13-1 at 12 (citing *Teubert v. SRA Int'l, Inc.*, 192 F.Supp.3d 569, 578 (D.N.J. 2016)). Taken in the strictest sense, a non-movant relying solely on her own deposition testimony—without additional supporting evidence—to defeat summary judgment would come dangerously close to the type of "unsupported assertions, conclusory allegations, or mere suspicions [that] are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). But Tarpeh does not—and need not—do that. In addition to Tarpeh's testimony, both Parties draw on additional evidence, including, *inter alia*, text messages between Tarpeh and Argiroudis (ECF No. 14-5), a declaration by Dosunmu (ECF No. 13-5), the Drawing Reports that provide data indicative of employee performance (ECF No. 13-8), and emails between Dosunmu, Tarpeh, and Argiroudis (ECF No. 13-11). As such, the Court does not adopt FRU's approach because the record evidence provided to the Court on summary judgment does not comprise solely deposition testimony, nor does Tarpeh rely solely on such testimony.

In her opposition brief, Tarpeh states that there is sufficient record evidence to disbelieve FRU's articulated reason. ECF No. 14-2 at 7–8. Tarpeh tries to discredit FRU by pointing to the

"inconsistencies and contradictions in [FRU's] proffered reasons." *Id.* at 7. As Tarpeh contends, FRU terminated her employment for performance reasons but did not issue Tarpeh "specific written warnings," did not make explicit that Tarpeh may be terminated if her performance did not improve after the January 6, 2023 meeting about her poor performance, and because Tarpeh did not receive a "formal discipline" as she had for past FRU policy violations. *Id.* at 8.

As an initial observation, not one of Tarpeh's points strikes the Court as inconsistent with or contradictory to FRU's proffered reason. At most, those points describe Tarpeh's ideal scenario in which she would have been given extraordinarily large berth by FRU before terminating her employment. But this fact remains: FRU terminated Tarpeh for poor performance almost a month after holding a meeting to discuss, *inter alia*, her poor performance. Nothing that Tarpeh has pointed to is inconsistent with or contradictory to that simple fact.

This simple fact gains depth, however, when appropriately contextualized within Tarpeh's claim and the other evidence gathered in this case. Despite Plaintiff's cursory and inartful briefing, Tarpeh's discrimination claim relies basically on comparator evidence, i.e. that Tarpeh, a Black woman, was fired for poor performance while two similarly situated, white employees were either not fired or fired after being given a much longer grace period.

At this juncture, the Court must view the evidence in the light most favorable to Tarpeh as the non-moving party. Although it is a very close call, the Court considers there to be enough evidence in the record to permit a factfinder "to believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764; *see also Watkins v. Mack Trucks, Inc.*, 2025 WL 2086107, at *6 (E.D. Pa. July 24, 2025); *Jenkins v. Ciocca Mgmt., Inc.*, 762 F. Supp. 3d 416, 429–30 (E.D. Pa. 2025). Tarpeh's testimony, the Dosunmu declaration, the Drawing Reports, and other evidence may permit a

factfinder to conclude that, when compared to the non-termination of a white employee and the nearly-eleven-month span given to another white employee before being terminated for poor performance (despite all three attending the same January 6, 2023 meeting addressing their poor performance), FRU's reason for terminating for Tarpeh may be pretext for discrimination against Tarpeh. *See Fuentes*, 32 F.3d at 764.

The Court also notes that a factfinder may of course conclude that FRU has not discriminated against Tarpeh after considering all the evidence. Arriving at that conclusion, however, requires weighing the evidence and making credibility determinations, both of which are inappropriate for this Court to do at summary judgment. *See Parkell*, 833 F.3d at 323.

### IV.    Conclusion

Because there is a genuine dispute about whether FRU's nondiscriminatory reason for terminating Tarpeh is pretext for racial discrimination, the Court denies FRU's motion for summary judgment. An appropriate order will be entered separately.